IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 2:16cr111 |
| ) | |
| NAPOLEON ROBINSON, ) | |
| ) | |
| Defendant. ) | |

### STATEMENT OF FACTS

By signing below, the parties stipulate that the allegations in the Criminal Information and the following facts are true and correct, and that had the matter gone to trial the United States would have proven them beyond a reasonable doubt, by competent and admissible evidence.

#### Background Information

1. The Internal Revenue Service ("IRS") is an agency within the Department of the Treasury responsible for administering and enforcing the tax laws of the United States and collecting taxes owed to the Treasury of the United States by its citizens and other entities.

2. The Internal Revenue Code imposes four types of tax with respect to wages paid to employees: income tax, Social Security tax, Medicare tax, and federal unemployment tax. Social Security tax and Medicare tax are imposed by the Federal Insurance Contributions Act and are collectively referred to as FICA taxes. FICA taxes are imposed separately on both employees and employers. An employer has a duty under the Internal Revenue Code to deduct FICA taxes from their employees' wages and to pay over the full amount to the IRS each quarter.

3. FICA taxes are often called trust fund taxes because the employer holds the employee's money in trust until making a federal tax deposit of the FICA withholdings. If trust fund taxes are not paid, the IRS may charge a trust fund recovery penalty (TFRP) against any

1



person determined to be responsible for collecting and paying withheld taxes on behalf of an employer who willfully fails to collect or pay them.

4. Beginning in or about January 2000 and continuing through December 2013, defendant NAPOLEON ROBINSON owned and operated a series of ship welding and repair businesses that operated under the following names: NAPS Ship Repair, Inc. (NAPS); Alpha Marine Repair, Inc. (AMR); Sky Enterprises, Inc. (Sky Inc.)[1] and Sky Enterprises, LLC (Sky LLC). These businesses derived income from contracts with various shipyards, including Colonna's Shipyard and Coastal Mechanical Systems, Inc., both of which are located in the Eastern District of Virginia.

5. ROBINSON managed the operation of NAPS, AMR, Sky Inc., and Sky LLC; supervised employees; secured ship repair contracts; directed the payment of business expenses; and had control over the business bank accounts. All of the shipyards with which these companies did business understood ROBINSON to be the owner and responsible party.

### NAPS Ship Repair

6. On January 10, 2000, ROBINSON incorporated NAPS in the state of New York, and listed himself as the owner of the company. NAPS operated in and around the area of Staten Island, New York, and provided ship welding and repair services to local shipyards.

7. Beginning in approximately 2005, NAPS regularly failed to pay employment taxes as required, leading to the assessment of penalties against the company by the IRS.

8. On July 29, 2009, NAPS was declared inactive and was dissolved by the state of New York.

---

[1] As discussed in further detail below, see infra ¶ 21, Sky Enterprises, Inc. was actually incorporated as "Liane Rolle dba Sky Enterprises, Inc."




## Alpha Marine Repair

9. In 2004, ROBINSON moved to Virginia. On September 3, 2004, AMR was incorporated in the Commonwealth of Virginia in the name of E.R., ROBINSON's sister. AMR did ship welding and repair work for several entities in the Tidewater area of Virginia, but primarily contracted with Colonna's Shipyard in Norfolk, Virginia. ROBINSON listed E.R. as the president of AMR when opening the business's bank account, and otherwise held her out as the owner of the company.

10 In truth and in fact, E.R. did not materially participate in the operation of AMR, did not ever invest any money into the business, and did not function as the owner. Rather, E.R. lived in Florida and was employed as a home health aide during the time AMR was in operation. ROBINSON maintained control of the business bank account, procured contracts, managed employees, and otherwise ran the business. ROBINSON caused to be created a rubber stamp of E.R.'s signature, which ROBINSON used to endorse checks and other paperwork on behalf of AMR.

11. ROBINSON hired Paychex to handle the payroll needs of AMR, including preparing employee's paychecks and calculating employment-related taxes. Paychex was also responsible for the preparation and filing of AMR's Quarterly Federal Tax Returns, known as IRS Forms 941. In dealing with Paychex on behalf of AMR, ROBINSON represented himself as the Operations Manager of the business, and served as the primary point of contact for Paychex.

12. Rather than pay over the taxes withheld from AMR employees' wages as required, ROBINSON chose to pay other expenses on behalf of the business, including payroll and creditors. ROBINSON also used the funds to pay his personal expenses, including family vacations, purchases of vehicles, and payments on his home mortgage.



13. In the summer of 2007, the IRS began sending notices to AMR as often as twice per month, regarding the company's non-payment of employment taxes. These notices stated the balance due to the IRS, requested immediate payment, and provided notice of the IRS's intent to levy various funds associated with the business.

14. On January 19, 2010, IRS opened a collections case regarding non-payment of employment taxes by AMR based upon the company's failure to pay over the taxes that had been withheld from its employees' paychecks, as reflected on the Forms 941 filed by Paychex. IRS Revenue Officer Munson was assigned to the collections case against AMR.

15. On October 6, 2010, E.R. was interviewed by a Revenue Officer based in Florida concerning her role in AMR. E.R. advised that ROBINSON is her brother and he used her name to form the business; however, she had no actual ownership or involvement with the operations of AMR.

16. On November 8, 2010, Revenue Officer Munson interviewed ROBINSON about his role in the operation and management of AMR. ROBINSON advised that he was the Operations Superintendent for the company, but was not an officer of the business. ROBINSON further represented to Revenue Officer Munson that he had no signature authority over AMR's business bank accounts. Both of these statements were false.

17. Based upon his investigation, Revenue Officer Munson determined that ROBINSON was, in fact, the true owner and responsible party for AMR's employment tax debt. On March 14, 2011, ROBINSON was assessed a Trust Fund Recovery Penalty of $52,107.34 based upon the withheld but unpaid employment taxes.

18. Notably, this was not the first Trust Fund Recovery Penalty assessed against ROBINSON. On April 3, 2007, he was assessed a $99,930.37 Trust Fund Recovery Penalty



based upon employment taxes withheld but not paid on behalf of NAPS – the predecessor company to AMR.

19. On February 2, 2011, the Commonwealth of Virginia cancelled AMR's corporate existence for failure to pay registration fees as required.

### Sky Enterprises, Inc.

20. In the fall of 2009, recognizing – based upon the multiple IRS notices, *see supra* paragraph 13 – the large tax balance AMR had accumulated, ROBINSON sought to create a new ship welding business that would replace AMR. ROBINSON intended that this new business would provide a fresh start from AMR's problems with the IRS.

21. He recruited his teenaged niece, L.R., to complete the documentation required to form Liane Rolle dba Sky Enterprises, Inc. and to serve as owner.[2] L.R. did not have any background in the ship repair industry, nor any experience running a business, but agreed to help her uncle.

22. L.R., who lived in Florida, traveled to Virginia at ROBINSON's direction and expense to sign various paperwork associated with the incorporation of the company and to open a business bank account. On November 9, 2009, Sky Inc. was incorporated in the Commonwealth of Virginia in L.R.'s name.

23. In truth and in fact, L.R. did not materially participate in the operation of Sky Inc. and did not function as the owner. During the time L.R. was held out to be the owner of Sky Inc., she remained in Florida and worked several jobs at fast food restaurants and retail stores. L.R. was not involved in securing contracts for the business, did not hire or fire employees, did not

---

2 ROBINSON created two separate entities, but, functionally, only Liane Rolle dba Sky Enterprises, Inc. was responsible to the IRS for employment tax payments.

5



purchase supplies for the business, and was not involved in calculating or paying the company's taxes and other financial obligations. Rather L.R.'s sole role at Sky, Inc. was to sign documents at ROBINSON's direction and meet with IRS personnel at ROBINSON's request. Further, ROBINSON arranged for the creation of a stamp bearing L.R.'s signature that could be used to approve/sign documents on behalf of Sky Inc. in her absence. L.R. received a small, irregular salary from Sky Inc. for her efforts.

24. In August 2010, ROBINSON hired Clemens & Associates to handle the payroll needs of Sky Inc. including preparing employee's paychecks and calculating employment-related taxes. Clemens & Associates was also responsible for the preparation and filing of Sky Inc.'s Quarterly Federal Tax Returns, known as IRS Forms 941. ROBINSON represented himself as the manager of Sky, Inc. and reported to Clemens & Associates personnel that L.R. was the owner of the company. Several months after hiring Clemens & Associates, ROBINSON brought L.R. by to introduce her to the staff. L.R. was introduced as the owner of Sky Inc. Apart from this one meeting, L.R. never interacted with Clemens & Associates personnel.

25. ROBINSON directed L.R. to sign most of the Forms 941 that were prepared by Clemens & Associates, even though she did not have actual financial responsibility for the business.[3] Upon ROBINSON's request, L.R. signed these forms and returned them to ROBINSON.

26. As with AMR, rather than pay over the taxes withheld from Sky Inc.'s employees' wages as required, ROBINSON chose to pay other expenses on behalf of the business, including payroll and creditors. ROBINSON also used the funds to pay his personal expenses, including

---

[3] On one occasion, ROBINSON utilized L.R.'s signature stamp on the Form 941. On another, ROBINSON had a family friend, J.D., sign the Form 941 on behalf of Sky Inc.



family vacations, purchases of vehicles, and payments on his home mortgage.

27. Beginning in the spring of 2011, the IRS began sending regular, frequent notices to Sky Inc. regarding its failure to pay employment taxes and the assessment of associated penalties.

28. On November 23, 2011, IRS opened a collections case regarding non-payment of employment taxes by Sky Inc. based upon the company's failure to pay over the taxes that had been withheld from its employees' paychecks, as reflected on the Forms 941 filed by Clemens & Associates. Coincidentally, as with the collections case against AMR, IRS Revenue Officer Munson was assigned to the collections case against Sky Inc.

29. In early 2012, Revenue Officer Munson requested a meeting with L.R. to discuss the IRS' efforts to collect employment taxes due from Sky Inc. ROBINSON paid to fly L.R. from Florida to Virginia and, on February 17, 2012, ROBINSON drove L.R. to the IRS office located in Norfolk, Virginia, for an interview with Revenue Officer Munson. In preparation for this meeting, ROBINSON assured L.R. that he would make the employment tax payments that were due. ROBINSON did not attend the meeting, but rather waited in the car for L.R.

30. On June 13, 2013, in the IRS office located in Norfolk, Virginia, ROBINSON was interviewed by Revenue Officer Munson concerning his role in Sky Inc. During this interview ROBINSON advised that he was only a supervisor for Sky Inc., and that L.R. was responsible for the finances of the business, including the payment of the employment taxes. ROBINSON further advised that he had been unaware of Sky Inc.'s failure to pay employment taxes until only recently.

31. Based upon his investigation, Revenue Officer Munson determined that ROBINSON was the true owner and responsible party for Sky Inc.'s employment tax debt. On December 23, 2013, ROBINSON was assessed a Trust Recovery Fund Penalty in the amount of



$143,338.80 based upon the withheld but unpaid employment taxes at Sky Inc.

### Sky Enterprises, LLC

32. In the summer of 2012, ROBINSON sought to create yet another new ship welding business that would this time replace Sky Inc. He recruited his long-time employee and close friend, D.R., to serve as the owner of Sky Enterprises, LLC (Sky LLC). Additionally, ROBINSON requested that his family friend, J.D.,[4] complete the documentation required to convert Sky Inc. to Sky LLC. On August 7, 2012, the Commonwealth of Virginia approved Sky Inc.'s articles of entity conversion, thereby creating Sky LLC.

33. D.R. ran the day-to-day operation of the ship repairs and managed employees, but he was not involved in the company's bookkeeping or the calculation or payment of taxes. J.D. served as Sky LLC's CEO and worked to repay Sky Inc.'s debts and make payments towards its tax balance. ROBINSON, however, continued to be involved in Sky LLC's operation, including hiring employees and procuring ship welding and repair contracts.

34. On December 5, 2013, the Commonwealth of Virginia cancelled Sky LLC's limited liability company existence for failure to pay registration fees as required. During its existence, Sky LLC remained current with its employment tax obligations and, upon its termination, did not owe any tax.

### Final Interaction with the Internal Revenue Service

35. On May 7, 2015, in the IRS office located in Norfolk, Virginia, ROBINSON was interviewed by Special Agents with the IRS Criminal Investigation. ROBINSON admitted that he owned each of NAPS, AMR, Sky Inc., and Sky LLC. ROBINSON further admitted that he

---

4 J.D. is the same individual referenced in connection with the use of his name on a Form 941 for Sky, Inc. *See supra* n. 3.



changed the business's name and the nominee owner on all associated paperwork in order to conceal from the IRS his true ownership. Finally, ROBINSON admitted that he made the decision to utilize the business revenue to satisfy other debts versus paying employment taxes to the IRS as required.

### Employment Tax Balance for AMR and Sky Enterprises, Inc.

36. For the tax years 2006, 2007, and 2008, AMR owed to the IRS, as of July 25, 2016, a total tax owed balance of $89,838.94, as well as penalties of $32,946.68 and interest of $53,871.49. In total, for the tax years 2006, 2007, and 2008, AMR owed to the IRS a total account balance of $176,657.11, as follows:

| Tax Period Ending | Total Account Balance |
| --- | --- |
| December 31, 2006 | $32,320.79 |
| March 31, 2007 | $9,505.38 |
| June 30, 2007 | $43,845.65 |
| September 30, 2007 | $48,441.93 |
| December 31, 2007 | $42,504.77 |
| March 31, 2008 | $38.59 |
| TOTAL | $176,657.11 |

37. For the tax years 2011 and 2012, Sky Inc. owed to the IRS, as of July 25, 2016, a total tax owed balance of $183,816.00, as well as penalties of $101,171.60 and interest of $36,773.30. In total, for the tax years 2011 and 2012, Sky Inc. owed to the IRS a total account balance of $321,760.90, as follows:

| Tax Period Ending | Total Account Balance |
| --- | --- |
| March 31, 2011 | $42,356.95 |
| June 30, 2011 | $67,092.66 |
| September 30, 2011 | $5,275.52 |
| December 31, 2011 | $11,963.26 |
| March 31, 2012 | $118,084.84 |

| June 30, 2012 | $47,823.19 |
| September 30, 2012 | $29,164.48 |
| **TOTAL** | **$321,760.90** |

## Conclusion

38. Combined, the tax due and owing, plus interest and penalties, resulting from ROBINSON's failure to pay employment taxes for Sky Enterprises, Inc. for the tax years 2011 and 2012 as of July 25, 2016, totals $321,760.90. Additionally, the tax due and owing, plus interest and penalties resulting from ROBINSON's failure to pay employment taxes for Alpha Marine Repair, Inc., totals $176,657.11. In total, the total tax due and owing resulting from ROBINSON's serial ownership of these ship repair businesses is $498,418.01.

39. The acts taken by the defendant, NAPOLEON ROBINSON, in furtherance of the offense charged in this case, including the acts described above, were done willfully and knowingly with the specific intent to violate the law. The defendant acknowledges that the foregoing statement of facts does not describe all of the defendant's conduct relating to the offense charged in this case nor does it identify all of the persons with whom the defendant may have engaged in illegal activities.

Respectfully Submitted,
DANA BOENTE
UNITED STATES ATTORNEY

By: *V. Kathleen Dougherty*
V. Kathleen Dougherty
Assistant United States Attorney
Virginia State Bar No. 77294
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number - (757) 441-6331
Facsimile Number - (757) 441-6689
v.kathleen.dougherty@usdoj.gov



*United States v. Napoleon Robinson*, 2:16cr111

<u>Defendant's Signature</u>:   After consulting with my attorney and pursuant to the plea agreement entered into this day between myself, the United States and my attorney, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
NAPOLEON ROBINSON
Defendant

<u>Defense Counsel's Signature:</u>   I am the attorney for defendant NAPOLEON ROBINSON. I have carefully reviewed the above Statement of Facts with him. To the best of our knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Alan S. Ross, Esq.
Counsel for Defendant

11